**In re C.H.**

[Cite as *In re C.H.*, 162 Ohio App.3d 602, 2005-Ohio-4183.]

Court of Appeals of Ohio,
Third District, Hardin County.

No. 6–05–03.

Decided Aug. 15, 2005.

Richard W. Miller III, for appellant.

E. Richard Eddy II, for appellee.

Mark Schwemer, guardian ad litem.

SHAW, Judge.

{¶ 1} The appellant, Misty Morrison, mother of C.H., appeals the judgment of the Hardin County Court of Common Pleas, Juvenile Division, granting permanent custody of C.H. to the Hardin County Department of Jobs and Family Services.

{¶ 2} On August 26, 2004, the Hardin County Department of Human Services filed a complaint alleging dependency of C.H., date of birth December 24, 2002, pursuant to R.C. 2151.04. Specifically, the complaint alleged:

On or about May 2, 2004 through on or about May 4, 2004, the child's maternal grandmother and custodian, Sandy Lawrence, left the child in the care of an individual with whom the Agency has serious concerns and prior involvement, namely Tristen Mendenhall, in Hardin County, Ohio and further Sandy Lawrence left the child without giving any person any means of contacting her. Further the Agency has had previous involvement with this child and Sandy Lawrence due to similar circumstances in the past. The Agency has taken permanent custody of children in the care of Sandy Lawrence previously. Further, the Mother has a drug and/or alcohol dependency problem which she has not sought treatment for. The putative Father is not present to care for the child. Due to the issues involved herein, it is not possible for the child to be placed with either of the child's parents within a reasonable time and/or he should not be placed with either of the child's parents.

On September 1, 2004, the court ordered a hearing to be held on September 22, 2004, to determine whether C.H. was a dependent child. Furthermore, C.H. was placed in temporary custody of the Department of Job and Family Services.

{¶ 3} On September 21, 2004, the Hardin County Sheriff attempted to serve a summons on Morrison for a hearing on placing C.H. in temporary custody with the Department of Job and Family Services, but the attempt failed. Accordingly, the hearing was postponed because of failure of service. Pursuant to a motion filed by the Department of Jobs and Family Services, the court ordered that the notice of an adjudicatory hearing be published in a newspaper of general

circulation in and around Hardin County, Ohio, on September 22, 2004. The adjudicatory hearing was scheduled for October 21, 2004.

{¶ 4} On October 4, 2004, the Hardin County Deputy Clerk of Courts sent a legal notice to the newspaper of general circulation for publication. The notice included, inter alia, that a hearing was going to be held on October 21, 2004, to review whether C.H. should be placed in custody of the Department of Job and Family Services. The notice also informed Morrison and Lee H., C.H.'s father, that they had the right to an attorney during the hearing.

{¶ 5} At this point, the record is unclear as to whether Morrison previously appeared in this case or had notice of the adjudicatory hearing. The hearing transcript indicates that at some point prior to the October 21, 2004 hearing, Morrison requested and received an attorney. At the hearing on October 21, 2004, the following colloquy took place:

The Court: Matter is assigned for an adjudicatory hearing and you did indicate that you did have service by publication, did you?

[The State:] You Honor, we filed a motion for publication back on September 22nd. The entry was approved by the Court and I believe that there has been publication on both parents.

The Court: We don't have the—anything back from the newspaper yet, but assume that that's coming. Is that right? We don't have anything from the newspaper?

[The State:] Oh, I thought we had. Okay.

The Court: The legal notice that was prepared indicated that it was set for October 21st * * * in this court. Misty Morrison and Lee [H.]. And the Court previously had appointed David Goodin to represent Misty Morrison at her request. And had you appeared in Court previously—

Mr. Goodin: Yeah, I believe—

The Court:—on this case?

Mr. Goodin: Well, we continued the hearing last month, I believe, because of her failure to appear. I think that's what initiated publication.

[The State:] (Inaudible) an initial hearing on her and Misty Morrison failed to appear.

The Court: Didn't she appear once though?

[The State:] She appeared in the old case if the Court would recall.

The Court: Oh, in an old case.

[The State:] We had—we had a prior filing in which she showed up—

The Court: All right. So you've never had any service on her in this case?

[The State:] In this case we published. On the last case we—she was here and she was planning on admitting to dependency, but she got confused. She asked for an attorney. We were at the 90th day or close to that, so we had to dismiss and refile.

The Court: I see. So you're getting service on her by publication as well. All right. Well, we can proceed but, of course, we'll have to follow up and make sure that the notice was properly published. Mr. Goodin, have you had any contact from Ms. Morrison?

Mr. Goodin: No, Your Honor. I made one letter—one attempt to contact her through written letter and numerous attempts through the phone calls. I would ask the Court to allow me to withdraw for failure to even contact her or to even try contacting her.

The Court: Where did we get a phone number for her? Was that—how did we get that? Was that from her?

[The State:] I don't know if the Court has a phone number. She previously was staying with her * * * [s]tep-greatgrandfather, but she is—

The Court: Is that who you were calling?

Mr. Goodin: I'm really not sure where I got the phone number from.

[The State:] In any event, she's—that's here in Kenton * * * but she is no longer there to the best of our knowledge.

The Court: Is—was he—let's see. Looks like technically that when they filed a new complaint you were notified, but there really wasn't any—or any reappointment that I see. All right. I'll allow you to withdraw then as counsel for her and you're free to go then, Mr. Goodin.

The court then heard testimony from C.H.'s case workers about Morrison's drug addiction, unemployment, and unstable living environment. The testimony also reflected that Morrison has not seen C.H. since August 17, 2004.

{¶ 6} On October 27, 2004, the court adjudged C.H. a dependent child pursuant to R.C. 2151.04 and ordered that C.H. remain in temporary custody of the Department of Job and Family Services. A dispositional hearing was scheduled for November 17, 2004. Again, Morrison was not served, because she could not be located; therefore, another publication was placed in the newspaper of general circulation.

{¶ 7} A dispositional hearing was held on November 17, 2004. Morrison was present at the hearing. At the hearing, the following took place:

The Court: When did the Agency—

Ms. Morrison: I know—

The Court: first get custody?

[The State:] May 5th of this year, Your Honor. We've dismissed and refiled one time because of the 90 day. Ms. Morrison showed up the last time at the 90th day and we had to dismiss and refile, which we did.

The Court: Well, I would be more inclined to consider your request. Although, the Court had appointed an attorney to represent you and he indicated he had no contact with you. And—

Ms. Morrison: I've tried to get a hold of him a couple of times.

The Court:—we allowed him to withdraw. Whereabouts of the mother were unknown.* * *

\* \* \*

The Court: All right. Previously, and this was in the publication, the Court has told you that you do have the right to have an attorney represent you, a Court appointed attorney if indigent and that explained to you how you would have an attorney. The Court, in fact, did appoint an attorney to represent you. He had no contact from you, he therefore asked to withdraw.

The court then proceeded to hear testimony from caseworkers from the Department of Job and Family Services, as well as testimony from Morrison regarding C.H.'s situation. The dispositional hearing did not conclude that day and was continued until December 20, 2004.

{¶ 8} Morrison failed to attend the December 20, 2004 continuance of the dispositional hearing to determine permanent custody because she was in the Allen County jail. The hearing continued that day, and on December 30, 2004, the court ordered that Morrison's and Lee H.'s parental rights be permanently terminated. Moreover, the court awarded permanent custody of C.H. to the Department of Job and Family Services. Morrison appeals alleging one assignment of error.

The trial court erred when it proceeded to conduct the permanent custody hearing when the appellant/mother was unrepresented by counsel.

{¶ 9} This case concerns the permanent termination of parental rights of a child, which is "the family law equivalent of the death penalty." *In re Hitchcock* (1996), 120 Ohio App.3d 88, 101, 696 N.E.2d 1090; *In re Rachal G.*, 6th Dist. No. L–02–1306, 2003-Ohio-1041, 2003 WL 863556, at ¶ 12. A parent's interest and rights in protecting their relationship with a child undeniably warrant constitutional protection. *Lassiter v. Dept. of Soc. Serv.* (1981), 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640, citing *Stanley v. Illinois* (1972), 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551. Accordingly, R.C. 2151.352 states:

A child, or the child's parents, custodian, or other person in loco parentis of such child is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152. of the Revised Code and if, as

an indigent person, any such person is unable to employ counsel, to have counsel provided for the person pursuant to Chapter 120. of the Revised Code. If a party appears without counsel, the court shall ascertain whether the party knows of the party's right to counsel and of the party's right to be provided with counsel if the party is an indigent person.

See, also, Juv.R. 4(A) ("Every party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent"). Furthermore, Juv.R. 4(F) states that "[a]n attorney * * * may withdraw only with the consent of the court upon good cause shown."

{¶ 10} Despite the protections that parents have when facing the possibility of permanent parental termination, parents "must exhibit cooperation and must communicate with counsel and with the court in order to have standing to argue due process was not followed in a termination proceeding. In cases in which a parent has communicated with the trial court or with counsel to explain a problem attending a scheduled hearing, Ohio court's have recognized that the failure of a trial court to take extra care to ensure the parent's presence is an abuse of discretion. Nevertheless, where a parent fails to maintain contact with counsel, fails to appear for scheduled hearings despite receiving notice of such, and fails to cooperate with counsel and the court, the court may infer that the parent has waived his or her right to counsel and may grant counsel's request to withdraw. To ascertain whether a waiver may be inferred, the court must take into account the total circumstances of the individual case, including the background, experience and conduct of the parent." *In re Rachal G.*, 2003-Ohio-1041, at ¶ 13–14.

{¶ 11} In the instant case, Morrison requests that we follow the holding of the Eighth District Court of Appeals in *In re M.L.R.*, 150 Ohio App.3d 39, 2002-Ohio-5958, 779 N.E.2d 772. In *M.L.R.*, the Cuyahoga County Department of Child and Family Services ("CCDCFS") took emergency custody of M.L.R. and filed a complaint that the child was dependent. Id. at ¶ 3. The juvenile court awarded temporary custody to the CCDCFS in May 2000. Id. In July 2000, the juvenile court continued the order of temporary custody and appointed counsel to represent the father. Id. Eventually, the juvenile court found by clear and convincing evidence that M.L.R. was a dependent child. Id. at ¶ 4.

{¶ 12} A dispositional hearing was held in July 2001. Neither the mother nor the father was present when the hearing was scheduled to begin at 9:00 a.m. Id. at ¶ 5. After waiting nearly an hour for the parents to arrive, the juvenile court started the hearing without them. Id. At the outset, the father's appointed counsel told the court that he had had no contact with the father since the adjudication hearing three months earlier. Id. Father's appointed counsel

requested to withdraw from the case, and the juvenile court granted his request. Id.

{¶ 13} The father eventually arrived at the hearing and was advised that his attorney had been allowed to withdraw because the father failed to contact him. Id. at ¶ 6. The father informed the court that he did contact his attorney on several occasions, and the court responded, "You may be seated, and we'll see what happens." Id.

{¶ 14} Ultimately, the juvenile court awarded permanent custody to CCDCFS, and the father appealed, alleging that the court erred by allowing his attorney to withdraw at the outset of the dispositional hearing. Id. ¶ 2. The Eighth District agreed and remanded the cause to the juvenile court. Id.

{¶ 15} In reaching its conclusion, the Eighth District opined:

As the basis for his motion to withdraw, the attorney stated simply that "[he] had no contact with [his] client" since the adjudication hearing and "[his] client has not been available or cooperative," without further explanation.

\* \* \*

This is not a case in which appellant can be deemed to have waived his right to counsel. First, there is no evidence that appellant asked his attorney to withdraw. Second, appellant demonstrably participated in the proceedings. He appeared at all of the prior hearings with his attorney. Although he was late for the dispositional hearing, he appeared for that as well.

\* \* \*

Based only on counsel's assertion that appellant was uncooperative, the court could not assess whether it was appropriate to allow counsel to withdraw and, if so, whether to appoint new counsel.\* \* \* Before the court can decide whether the alleged uncooperativeness has made it unreasonably difficult for an attorney to represent the client effectively, it must ascertain the source of the uncooperativeness.

For example, by lack of cooperation, the attorney may actually mean lack of communication. This appears to be the case here, given counsel's assertion that he had not been in contact with his client since the adjudication hearing. However, communication is a two-way street. An attorney's assertion that his or her client has not contacted the attorney does not demonstrate that the client has been "uncooperative" unless the attorney has also affirmatively attempted to contact the client and has been unable to reach him or her.

Id. at ¶ 15–17. Ultimately, the court concluded:

To allow counsel to withdraw from representation on the day of the dispositional hearing, in his client's absence, without prior motion or notice of his client, without a demonstration to the court that the client had rendered it

unreasonably difficult for the attorney to represent him, and without appointing new counsel and/or continuing the hearing, and to require the client to proceed immediately without representation, was both erroneous and prejudicial.

Id. at ¶ 22.

{¶ 16} For additional guidance, we turn to the Sixth District's decisions in *In re Savanah M.*, 6th Dist. No. L–03–1112, 2003-Ohio-5855, 2003 WL 22462478 and *In re Rachal G.*, 2003-Ohio-1041. In *Savanah M.*, the Lucas County Department of Children Services ("LCCS") took emergency custody of Savanah immediately after her birth because the mother tested positive for marijuana. Id. at ¶ 2. When Savanah was released from the hospital, she was placed in foster care. Id. Upon the filing of the case under which LCCS first obtained temporary custody of Savanah, the juvenile court appointed counsel to represent the mother; however, that case could not be completed within the time frame required by law, so LCCS refiled the complaint seeking dependency and permanent custody. Id. at ¶ 3.

{¶ 17} In December 2002, the mother was personally served with a summons and complaint notifying her that LCCS was seeking permanent custody of Savannah. Id. at ¶ 4. The summons also notified her of the date of the proceedings. Id. The mother failed to appear at the pretrial and the adjudication and disposition hearings. Id. at ¶ 5–6. The mother's appointed counsel requested to withdraw, and her request was granted. Id. at ¶ 21, 26. The case proceeded to disposition and LCCS was granted permanent custody of Savannah. Id. at ¶ 27. The mother appealed, alleging that the juvenile court erred by allowing her counsel to withdraw prior to the adjudication and disposition hearings. Id. at ¶ 30. The Sixth District affirmed the juvenile court's decision. Id. at ¶ 40.

{¶ 18} Like the case before us, the mother in *Savanah M.* requested that the Sixth District follow the Eighth District's holding in *M.L.R.* Id. at ¶ 35. The Sixth District rejected the mother's request and distinguished the case by stating:

In the present case, the source of uncooperativeness is clear. Appellant was personally served with notice of the scheduled hearings at her address of record. It is noteworthy that this address is the same address appellant listed when she filed a pro se notice of appeal. Accordingly, it is undisputed that she received notice of the scheduled hearings. [Her appointed attorney] stated that she had made continued attempts to contact appellant by letter and telephone at her last known address to no avail and that no mail had been returned to her as undelivered. In addition * * * the LCCS caseworker * * * stated that she would be very surprised to see appellant appear at the hearing.

Subsequent evidence submitted at the hearings revealed that appellant had been disinterested in Savannah from the time of her birth, had been uncooperative with regard to case plan services, refused drug treatment, refused recommended psychiatric counseling, and failed to keep regularly scheduled meetings with her caseworkers.

Id. at ¶ 37.

{¶ 19} Finally, in *In re Rachal G.*, LCCS filed a complaint in dependency action in July 2001. Id., 2003-Ohio-1041, at ¶ 2. The complaint asked that custody of the twins be awarded to their aunt. Id. After a hearing, which both parents attended, the court awarded temporary custody to the aunt and appointed separate counsel for both the mother and the father. Id. Furthermore, a case plan was established that would enable the parents to regain custody. Id. at ¶ 3.

{¶ 20} In December 2001, LCCS reviewed the parents' progress and noted that their drug habits and the living conditions at home never changed. Id. at ¶ 5. Accordingly, the aunt that had been awarded temporary custody sought to adopt the children; both the mother and father agreed to this plan. Id. at ¶ 6. In order for this plan to work, however, LCCS had to acquire permanent custody to facilitate the adoption; therefore, LCCS filed an amended case plan. Id.

{¶ 21} At a hearing in March 2002, both parents appeared and agreed to the stipulated plan. The plan indicated, inter alia, that the mother's and father's parental rights should be terminated because that was in the best interest of the children. Id. Subsequently, both parents were served with notice to appear at a pretrial conference regarding permanent custody. Id. at ¶ 7. Neither parent appeared and only the mother's counsel was present. Id.

{¶ 22} Thereafter, the case proceeded to a dispositional hearing in August 2002. Id. At this hearing, both parents' counsel appeared, but neither parent did, and both counsel sought to withdraw from the case. Id. The father's counsel stated that she had not heard from the father since the March hearing. Id. Furthermore, the father's counsel stated that at that time, the father "was vacillating about his wishes with regard to the case," and, therefore, counsel "did not know what [the father] wanted her to do and asked that she be allowed to withdraw." Id.

{¶ 23} The juvenile court granted their requests, and the Sixth District affirmed its decision. The court, after reviewing the *M.L.R.* holding, stated:

In the present case, appellant demonstrated a disinterest in the matter from the beginning. His filing of a notice of appeal is the first affirmative step he has taken to regain custody of his children since the complaint was filed. Although he did appear at hearings early on, he ultimately failed to cooperate

with the court and made no other appearances in the case after the March 14, 2002 hearing at which he agreed that LCCS should seek permanent custody of the girls.

Id. at ¶ 16.

{¶ 24} In the instant case, the record reveals that Morrison was present at a hearing when the Department of Jobs and Family Services initially filed a complaint alleging dependency. That first case was dropped pursuant to Morrison's request, and the record indicates that once the second complaint was filed, Morrison failed to appear for the adjudication hearing. At the hearing, Morrison's attorney stated that he had sent one letter and made numerous phone calls in an attempt to contact her about the case, but all attempts failed. At his request, the juvenile court granted his motion to withdraw from the case.

{¶ 25} Finally, at the first dispositional hearing, Morrison did appear and noted that she made several attempts to contact her attorney. Furthermore, the court denied her request for a continuance and proceeded to hear testimony of whether the Department of Jobs and Family Services should be ordered permanent custody of C.H. The dispositional hearing was continued, and Morrison failed to appear again because she was incarcerated in Allen County.

{¶ 26} Based on the facts of this case, we conclude that Morrison displayed the kind of "uncooperativeness" that the father in *M.L.R.* did not display. Primarily, we note Morrison's lack of interest in the case. First, we note the difficulty the state had in serving Morrison with notice about the second complaint. The fact that the Department of Jobs and Family Services initiated the first case, and Morrison knew about the first case, placed Morrison on notice that future action by the Department of Jobs and Family services to obtain custody of C.H. could occur. Nevertheless, the record indicates that Morrison made no attempt to involve herself in the action or at least update her personal information so that she could be personally served notice when a second complaint was filed by the state.

{¶ 27} Second, we note Morrison's failure to attend the pretrial and adjudication hearings. The record indicates that notice of both the adjudication and disposition hearings was published in a newspaper of general circulation. With this notice, Morrison attended the adjudication hearing, but failed to show for the dispositional hearing.

{¶ 28} Finally, we highlight Morrison's counsel's attempts to contact Morrison once by mail and numerous times by phone. Again, because of Morrison's lack of interest in this case, she failed to provide her attorney, the state, or the Department of Jobs and Family Services with any contact information despite being on notice of the state's attempt to seek custody of C.H. when it filed the

first complaint. Moreover, despite Morrison's alleged attempts to contact her attorney, the record does not indicate that her appointed counsel moved offices or locations, which, if true, could have made it more difficult for her to reach him.

{¶ 29} In sum, we conclude that the instant case is similar to *Savanah M.* and *Rachal G.* Specifically, based on Morrison's failed attempts to maintain contact with counsel, her failed attempts to appear at scheduled hearings, and her failed attempts to cooperate with counsel, we infer that Morrison waived her right to counsel. Moreover, Morrison's attorney's assertion that his client has not contacted him does demonstrate that Morrison has been uncooperative because the attorney also affirmatively attempted to contact Morrison on numerous occasions and failed to reach her. Therefore, the assignment of error is overruled, and the judgment of the juvenile court is affirmed.

Judgment affirmed.

CUPP, P.J., and ROGERS, J., concur.