[Cite as *In re B.M.*, 2012-Ohio-4093.]

STATE OF OHIO       )            IN THE COURT OF APPEALS
                     )ss:        NINTH JUDICIAL DISTRICT
COUNTY OF WAYNE    )

IN RE: B.M.
      B.M.                       C.A. Nos.    12CA0009
                                          12CA0010
                                          12CA0011
                                          12CA0012


                                          APPEAL FROM JUDGMENT
                                          ENTERED IN THE
                                          COURT OF COMMON PLEAS
                                          COUNTY OF WAYNE, OHIO
                                          CASE Nos.    11-1916-AND
                                                          11-1915-AND


DECISION AND JOURNAL ENTRY

Dated: September 10, 2012

---

MOORE, Judge.

**{¶1}** Appellants, Tammy L. ("Mother") and Steven M. ("Father"), appeal from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that placed their two minor children in the temporary custody of Wayne County Children Services Board ("CSB") after adjudicating them dependent children. This Court affirms.

I.

**{¶2}** Mother and Father are the natural parents of B.M., born January 9, 1996, and B.M., born February 11, 1998. On September 22, 2011, Wayne County Children Services Board filed complaints alleging that both children were neglected and/or dependent due to the alleged mental health problems of their parents, particularly Mother, and concerns that Mother and the children had been the victims of physical and emotional abuse by Father. One week earlier,

Mother had been admitted to the psychiatric unit of a hospital after she came to the emergency room of another hospital with multiple cuts and bruises and reported that she had tried to kill herself and believed that she had also killed her family. She also told hospital personnel that she had repeatedly been the victim of physical abuse by Father, who resided with her and the children. After Mother was released from the hospital, the children were removed from the home pursuant to an order of emergency temporary custody.

{¶3} When sheriff's deputies went to the home to remove the children, they were further concerned to observe twenty to thirty rifles and shotguns, which were not locked in cabinets and had no safety mechanisms on the triggers. The guns were in plain view in every room of the house. Because one gun was leaning near the door that the deputies had entered, they checked and verified that it was loaded. Given Mother's expressed suicidal and homicidal thoughts and her statements about Father being abusive, CSB had additional concerns that the presence of weapons throughout the home posed a threat to the safety of the children.

{¶4} The trial court appointed Mother an attorney, who represented her at the shelter care hearing. At the beginning of the adjudicatory hearing, however, Mother insisted on firing her appointed counsel and, because she wanted to proceed with the hearing that day, decided to represent herself. The trial court allowed counsel to withdraw, but required her to remain in the courtroom to provide assistance to Mother, which she occasionally did during the hearing. CSB presented its case and Mother and Father represented themselves in their cross-examination of the witnesses. Neither parent presented any evidence.

{¶5} Following the hearing, the trial court dismissed the allegations of neglect and found that the agency's allegations about physical abuse in the home had not been established because the only evidence of abuse came from statements made by Mother at the hospital while

her mental condition was unstable. The court found that the agency had proven that the children were dependent, due to their environment in the home with Mother because she had been suicidal and homicidal and that, at the time she was released from the hospital and the agency filed its complaint, she "was still struggling with her [mental health] condition[.]" The trial court ordered that the children be placed in the temporary custody of CSB. The parents jointly appeal, raising four assignments of error. We have re-ordered and consolidated certain assignments of error to facilitate discussion.

II.

### ASSIGNMENT OF ERROR I

THE JUVENILE COURT ERRED IN ITS DENIAL OF COUNSEL FOR [MOTHER].

### ASSIGNMENT OF ERROR III

THE JUVENILE COURT ERRED IN ITS DISMISSAL OF COUNSEL [] DURING FINAL DISPOSITION.

{¶6} Through their first and third assignments of error, the parents argue that the trial court denied Mother her right to counsel because it allowed her court-appointed attorney to withdraw and did not appoint new counsel for her at the adjudicatory or dispositional hearing. Pursuant to R.C. 2151.352, an indigent parent has the right to court-appointed counsel "at all stages" of dependency and neglect proceedings. Juv.R. 4 further provides that the right to counsel arises "when a person becomes a party to a juvenile court proceeding[]" and that, after an attorney enters a notice of appearance on behalf of a party, the attorney may withdraw "only with the consent of the court upon good cause shown." Juv.R. 4(A), (D), and (F).

{¶7} Circumstances demonstrating "good cause" have been found "'[w]here a parent fails to maintain contact with counsel, fails to appear for scheduled hearings despite receiving

notice of such, and fails to cooperate with counsel and the court[.]'" *In re C.H.*, 162 Ohio App.3d 602, 2005-Ohio-4183, ¶ 10 (3d Dist.), quoting *In re Rachal G.*, 6th Dist. No. L-02-1306, 2003-Ohio-1041, ¶ 13-14. Under those circumstances, the trial court may infer that the parent has waived her right to counsel and allow counsel to withdraw. *Id.*; *see also In re T.K.*, 9th Dist. No. 24006, 2008-Ohio-1687, ¶ 18-19.

{¶8} The trial court appointed counsel for Mother shortly after this case began and prior to the shelter care hearing. The record reflects that, several weeks before the adjudicatory hearing, Mother's counsel sent written notice to the court that, since the initial hearing, she had been unable to meet with Mother in person or over the phone without repeated interruptions by Father. Despite counsel repeatedly requesting Mother to meet with her without Father present, counsel had been unable to adequately consult with her client about the merits of the case. Consequently, counsel moved the court to order Mother to meet with her without Father present.

{¶9} The trial court ordered Mother to meet with her counsel at a set time and place and ordered Father not to interfere with their attorney-client consultation. At the commencement of the adjudicatory hearing one week later, however, counsel informed the court that Mother did not meet with her as the court had ordered. Instead, Mother had just informed counsel on the morning of the adjudicatory hearing that she was "firing" her. Mother confirmed to the trial court that she had fired counsel because "I just choose not to have her as my attorney." Mother explained to the court that she and her attorney had disagreed about how to defend Mother against the dependency and neglect complaints. The trial judge asked Mother whether she wanted an attorney and she responded that she wanted to have the hearing finished that day. After further discussion about Mother representing herself and having her former counsel remain in the courtroom to provide legal assistance if Mother desired, the trial court inquired of Mother

whether she understood that she would be representing herself. Mother responded, "I understand."

{¶10} Mother represented herself throughout the hearing. She raised repeated objections during the examination of witnesses by counsel for CSB and conducted a cross-examination of each witness. Her former counsel offered occasional assistance to Mother by raising a few objections and explaining legal issues to her. Counsel further aided Mother by reminding opposing counsel that he should grant Mother some leeway because she was representing herself.

{¶11} During the period between the adjudicatory and dispositional hearing, Mother did not file any request for appointment of new counsel. In fact, she filed documents with the trial court that continued to represent that she and Father were proceeding pro se.

{¶12} Although the record does not include a transcript of the dispositional hearing, according to the trial court's judgment entry, the hearing proceeded as scheduled on January 24, 2012. Mother and Father failed to appear at the dispositional hearing, but Mother's former counsel was present, prepared to assist Mother if Mother desired her legal advice. Because Mother had discharged her former counsel and did not appear at the hearing, the trial court released her former counsel from any further assistance to Mother.

{¶13} Given the totality of the circumstances, including Mother's refusal to work with her appointed counsel, her request that counsel not assist her and that she instead proceed pro se, her actions in representing herself at the adjudicatory hearing and through later filings with the court, and her failure to appear at the dispositional hearing, the record demonstrates that the trial court had good cause to allow Mother's appointed counsel to withdraw. Moreover, because Mother did not request new counsel but continued to submit filings on her own behalf, explicitly

representing that she was "pro-se," the trial court did not err in failing to appoint new counsel to represent Mother. The parents' first and third assignments of error are overruled accordingly.

## ASSIGNMENT OF ERROR II

INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶14} Through their second assignment of error, the parents argue that, to the extent that Mother was represented by court-appointed counsel prior to and at the adjudicatory hearing, she was denied the effective assistance of counsel. Specifically, they assert that counsel's representation was deficient because she allowed the court to consider hearsay statements made by Mother's brother without subjecting the brother to cross-examination at the adjudicatory hearing. The statements at issue were apparently made by the brother to hospital personnel about Mother being the victim of physical abuse by Father.

{¶15} In evaluating an ineffective assistance of counsel claim, this court employs a two-step process as described in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the court must determine whether there was a "substantial violation of any of defense counsel's essential duties to his client." *State v. Bradley*, 42 Ohio St.3d 136, 141 (1989). Second, the court must determine if prejudice resulted to Defendant from counsel's ineffectiveness. *Id.* at 141-42. Prejudice exists where the trial result would have been different but for the alleged deficiencies of counsel. *Id.* at paragraph three of the syllabus.

{¶16} Even assuming that Mother's former counsel was still representing her at the adjudicatory hearing, the parents have failed to demonstrate that counsel committed any error pertaining to the brother's statements. Only once did CSB attempt to question a witness about the brother's hearsay statements. Before the witness answered, Father raised an objection, which

the trial court sustained. Consequently, CSB did not attempt to raise the issue again and never presented any evidence about the brother's hearsay statements.

{¶17} All other attempts to admit the brother's statements were made by Father and Mother, not CSB or the guardian ad litem. Apparently attempting to discount the credibility of the brother's statements, Mother and Father repeatedly tried to ask witnesses about the brother. The actions of Mother's former counsel actually helped to prevent the parents from admitting the brother's hearsay statements. Each time they raised the issue of Mother's brother, they were reminded by Mother's former counsel or the trial court that the brother's statements were hearsay and would not be admitted into evidence. Even one of the witnesses responded with, "I can't say that" when Mother asked her what her brother had said. Ultimately, the brother's hearsay statements were never offered or admitted into evidence.

{¶18} Throughout the hearing, the trial judge stated that he would not be considering any hearsay statements, including any made by Mother's brother. In the judgment entry, the trial judge further indicated that he had not considered any statements made by the brother at the hospital but that all information that was offered by hospital personnel came directly from Mother herself. The trial court ultimately concluded that CSB had failed to prove that Father was a violent or abusive man or that he posed a threat to the children.

{¶19} The parents have failed to prove that Mother received deficient legal representation from her court-appointed counsel or that she was prejudiced by counsel's representation in any way. The second assignment of error is overruled.

**ASSIGNMENT OF ERROR IV**

THE TRIAL COURT ERRED IN DETERMINING A PSYCHOLOGICAL EVALUATION FOR FATHER BASED ON THE OUTCOME OF THE MOTHER[']S PSYCHOLOGICAL EVALUATION.

**{¶20}** Although the specific argument raised by the parents under their final assignment is not entirely clear, they challenge that aspect of the trial court's dispositional order that also ordered Mother to obtain a psychological evaluation. This Court will not reach the merits of this assignment of error because it is without jurisdiction over that aspect of the trial court's order.

**{¶21}** Section 3(B)(2), Article IV of the Ohio Constitution limits this court's appellate jurisdiction to the review of final judgments of lower courts. For a judgment to be final and appealable, it must satisfy the requirements of R.C. 2505.02 and, if applicable, Civ.R. 54(B). *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 88 (1989). Although Civ.R. 54(B) does not apply to this case, for the order to be final and appealable, it must fit into one of the categories set forth in R.C. 2505.02. *General Elec. Supply Co. v. Warden Elec., Inc.*, 38 Ohio St.3d 378, 380 (1988). R.C. 2505.02(B)(1) provides that an order "that affects a substantial right in an action that in effect determines the action and prevents a judgment" is final and appealable.

**{¶22}** In *In re Murray*, 52 Ohio St.3d 155, (1990) syllabus, the Ohio Supreme Court held that "[a]n adjudication by a juvenile court that a child is 'neglected' or 'dependent' as defined in R.C. Chapter 2151 followed by a disposition awarding temporary custody to a public children services agency pursuant to R.C. 2151.353(A)(2) constitutes a 'final order' within the meaning of R.C. 2505.02 and is appealable to the court of appeals pursuant to R.C. 2501.02." The Court emphasized in *Murray* that, because the "temporary" disposition could continue for up to two years, and the adjudication had significant implications on the parents' fundamental rights that might not otherwise be subject to appellate scrutiny, the order fell within the meaning of R.C. 2505.02(B)(1) as an order that affected the parents' substantial rights and, in effect, determined that action as to that issue, as the adjudication is never re-litigated. *Id*. at 157-158.

Moreover, the order falls within the explicit jurisdiction of the appellate courts under R.C. 2501.02. *Id*. at 158-159.

{¶23} Although the aspects of the trial court's order that adjudicated the children dependent and placed them in the temporary custody of CSB are final and appealable, other orders that do not pertain to those final aspects are not, as they have not yet determined the action or affected the substantial rights of the parties. *See*, *e.g*., *Smith v. Williams*, 10th Dist. No. 09AP-732, 2010-Ohio-1381, ¶ 23 (only the aspect of the trial court's order that denied a stay pending arbitration was final and appealable); *Interstate Properties v. Prasanna, Inc*., 9th Dist. Nos. 22734 and 22757, 2006-Ohio-2686, ¶ 13-16 (the portion of the order that granted summary judgment on all claims against certain defendants was final and appealable, but other aspects of that order were not).

{¶24} Specifically at issue under the fourth assignment of error is the trial court's requirement that Mother obtain a psychological evaluation as part of the case plan, which did not affect her substantial rights, nor did it determine the action as to that issue. *Prakash v. Prakash*, 181 Ohio App.3d 584, 2009-Ohio-1324 ¶ 16-20 (10th Dist.), citing *Harness v. Harness,* 143 Ohio App.3d 669, 676-677 (4th Dist.2001); *see also  Myers v. Toledo,* 110 Ohio St.3d 218, 2006-Ohio-4353, syllabus (applying similar reasoning to a court order that a Workers' Compensation claimant undergo a physical examination).  Therefore, because this Court is without jurisdiction over this interlocutory aspect of the trial court's order, we will not reach the merits of the fourth assignment of error.

III.

**{¶25}** The parents' first, second, and third assignments of error are overruled and the fourth assignment of error was not addressed for lack of jurisdiction. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
BELFANCE, J.
CONCUR.

APPEARANCES:

TAMMY LENART and STEVE MURPHY, pro se, Appellants.

DANIEL R. LUTZ, Prosecuting Attorney, for Appellee.

JEREMY M. SZUCS, Guardian ad Litem.

CONRAD OLSON, Attorney at Law, for the Children.