**RIEGER, Appellee,**

v.

**RIEGER, Appellant.**

[Cite as *Rieger v. Rieger,* 165 Ohio App.3d 454, 2006-Ohio-482.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20754.

Decided Feb. 3, 2006.

Joseph M. Rieger, appellant, pro se.

WOLFF, Judge.

{¶ 1} Joseph Rieger appeals pro se from the overruling of his motion to seal the record of a consented-to civil protection order ("CPO"). Rieger appeared pro se for an evidentiary hearing before a magistrate. The magistrate overruled the motion. After Rieger filed objections, the trial court found the objections to be without merit and adopted the magistrate's decision and permanent order. Cathy Rieger did not appear in the trial court and has not appeared here.

{¶ 2} Rieger's pro se brief contains thirteen assignments of error, which we have rearranged and combined in order to facilitate our discussion and disposition of this appeal.

{¶ 3} Rieger's essential contention is that the CPO should be sealed, because its accessibility on the Internet is preventing him from obtaining a better job. He contends that prospective employers do background checks on the Internet, and the CPO on his record is a red flag for those employers.

{¶ 4} The magistrate's decision is as follows:

{¶ 5} "On March 30, 2004, the respondent, Joseph M. Rieger, filed a motion to seal the records of the within domestic violence action. The hearing was held on April 15, 2004. Present was respondent without an attorney.

{¶ 6} "The court issued a civil protection order as contained in a consent agreement on January 27, 1998. By its terms, this civil protection order expired on January 27, 2003. The respondent is requesting that the court seal the record of this domestic violence action so that it will not be available for review in a background check which he believes may interfere with his chances of obtaining future employment elsewhere.

{¶ 7} "The respondent has not been able to obtain other employment and he believes that it is because of background checks by prospective employers. He has been and is currently employed as a financial analyst with the City of Dayton for the past 9½ years and he anticipates leaving that position at the end of ten years. The respondent doesn't believe that he has a future to be promoted to a supervising position and he wants to move to Florida with his cousins or another area and obtain employment. His resumes have not resulted in other employment as he has desired and he does not believe that he should be required to maintain his current employment if he chooses not to do so.

{¶ 8} "The respondent entered into a consent agreement on January 27, 1998 and was represented by an attorney at that time. The allegations in the petition were that the respondent pushed the petitioner, became enraged and ripped down the shower curtain, threw towels at her, threatened to shoot the petitioner and had stalked the petitioner.

{¶ 9} "There is no law permitting the court to grant a request to seal the record of a civil protection order. The granting of a civil protection order is not a criminal offense, no charges are filed and the granting of a civil protection order does not make the respondent guilty of any crime. Therefore, there is nothing to expunge or seal as in a criminal action. See O.R.C. § 2953.32(C)(2); see also *P.E.S. v. K.L.*, 720 A.2d 487 (Pa.Super.Ct.1998). Further, the law provides for enhanced criminal penalties for a subsequent offenses of domestic violence and the sealing of a civil record destroys the one means that the public has of assessing the danger the offender presents to society and other potential victims. The respondent has not shown a sufficient basis to 'expunge' or 'seal' the record in this action, even if there was some authority to allow the court to take such action."

## Appellant's Assignments of Error

{¶ 10} 1. "The assignment of error is that the magistrate did not allow me to introduce as evidence a valid and common sense based study, which I verily believe in. The Community Research Partners and the Ohio State University Center for Law, Policy, and Social Science performed the study.

{¶ 11} "The study speaks directly to my motion for the courts to seal my CPO that is out in the public domain via the Montgomery County Court website. The study goes on to say that 28% of employers use the Internet to do background checks.

{¶ 12} "Mr. Rieger (appellant) has a master's degree from Wright State University and the level of employment that Mr. Rieger seeks is highly scrutinized by employer background checks."

{¶ 13} This assignment concerns information that appellant obtained from the Internet to the effect that 28 percent of employers use the Internet for background searches and that a *conviction* for domestic violence could be a red flag. The trial court properly refused to admit this hearsay evidence. Furthermore, Rieger testified without objection that 28 percent of employers use the Internet for background searches.

{¶ 14} This assignment is overruled.

{¶ 15} 2. "The assignment of error in this case is that Cathy Rieger (appellee) was intrinsically involved in this case as the other part of the contract. Cathy

Rieger said that according to my attorney Bob Goelz that if I agreed to this CPO then she would drop a stalking charge that she had against me in the city of Riverside. We lived one mile apart for over 6 months and she happened to see me on a common road we share in the neighborhood. Well, Cathy Rieger did not drop the stalking charge she only reduced it to disorderly conduct. Thus, the whole CPO is in error because she did not hold up her part of the agreement to drop the stalking charge completely—no reduced charge.

{¶ 16} 4. "The assignment of error is that Bob Goelz informed me that after 5 years the whole record of this proceeding would not be available for viewing and that no crime was ever deemed to have occurred.

{¶ 17} 8. "The assignment of error is that Cathy Rieger (appellee) didn't dismiss the charges she had them reduced to disorderly conduct. She violated her verbal agreement with me. Thus, the CPO contract is not based on the full faith of the parties. Cathy Rieger did not hold up to her word to drop the D2 court charges. I would never have signed the agreement had I known that she was not going to hold up her part of the agreement (whether verbal or written). Also, a CPO is not a violation of any law it is an agreement in writing. My attorney Bob Goelz told me that after five years the CPO and all of its language so to speak would disappear from the record. I never would have agreed to it had I known that it would damage me beyond the five years by remaining on the Montgomery County public records data base."

{¶ 18} In these three assignments, Rieger complains that Cathy Rieger did not fulfill her duty to drop the stalking charge and that Rieger's lawyer at the time he agreed to the CPO told him that the CPO would not remain of record after five years. He claims that the CPO is defective, because Cathy Rieger did not fulfill her duty to drop the stalking charge if he agreed to the CPO. He also claims that he would not have agreed to the CPO had he known that it would remain of record after its five-year term expired.

{¶ 19} Rieger has ventured beyond the hearing transcript in these assignments. Even so, these assignments are not cognizable in this appeal, which is from a refusal to seal the record of the CPO. Rieger's remedy for these particular grievances is a Civ.R. 60(B) motion for relief from judgment, which he has not pursued.

{¶ 20} These assignments are overruled.

{¶ 21} 6. "The assignment of error is the reality is that employers do background checks using the Internet in some cases. And I feel in all common sense that when employers saw my CPO records that's why they didn't hire me."

{¶ 22} It is entirely speculative that the record of the CPO has prevented Rieger from obtaining jobs he has applied for.

{¶ 23} This assignment is overruled.

{¶ 24} 7. "Judge Brigner wouldn't allow my daughter to have special visitation for my mother's viewing and funeral. I submitted a motion to the court for my daughter to be able to attend my mom's viewing and funeral. A person named Kathy who worked for Judge Brigner's office came out to me in the lobby and said it was too late in the game for my request to be granted. She said that was what Judge Brigner wanted communicated to me. So I say to the appeals court, is that not a clear prejudice against Joe Rieger (appellant)?"

{¶ 25} This assignment finds no support in the hearing transcript or record before us and is immaterial to this appeal. It is, therefore, overruled.

{¶ 26} 9. "The assignment of error is that the CPO agreement shows that it is in effect for five years. Five years ended in early 2003 thus, the agreement is over and all vestiges of it are. But, as long as it is on the Montgomery County records website it will continue to have an effect on Joseph Rieger (appellant) long after the contract ended. So in essence the contract is beyond five years even though Mr. Rieger (appellant) never agreed to that. Also, the magistrate continues to reject my evidence that I verily believe in as an important part of my case."

{¶ 27} The magistrate refused to accept Rieger's copy of the CPO into evidence, because the original is already in the court's file. The magistrate was certainly entitled to exclude merely duplicative evidence.

{¶ 28} This assignment is overruled.

{¶ 29} 10. "The assignment of error is that the magistrate will not allow statements made in court by Joseph Rieger (appellant) to be introduced as evidence. these statements clearly speak of Mr. Rieger's good character which Mr. Rieger's feels is important for the court to hear. A person of good character should not have their credibility destroyed by having a CPO record on the Montgomery County website."

{¶ 30} Rieger's Exhibit D chronicled several heroic deeds that Rieger performed. The magistrate excluded the exhibit from evidence. Rieger had testified to these heroics, so he could not have been prejudiced by exclusion of the exhibit, which was merely duplicative of his testimony.

{¶ 31} This assignment is overruled.

{¶ 32} 3. "The assignment of error is that the magistrate is treating my request to have the CPO record sealed as if a crime were committed. If it is true

that no conviction occurred and nor is it on my record then I ask why does the magistrate want to slander my good reputation by leaving the CPO out on the website even though I clearly informed the courts of the damage being done to my employability?

{¶ 33} 4. "The error is that I will be punished by this CPO in one of the most vital aspects of human dignity—the ability to find excellent and self-actualizing employment. With this CPO showing up for public viewing beyond the contracted 5 year time limit of the CPO I am being damaged forever. That is common sense.

{¶ 34} 5. "The assignment of error is that courts can set new precedent by their judgments. The magistrate is looking for prior precedent and not willing to set new precedent. The magistrate also said that he has worked on CPOs since 1978 and does roughly 1500 a year and that I am the first person he has seen who asked to have a CPO record sealed.

{¶ 35} 11. "The assignment of error is that a convicted murderer can have their record expunged (sealed, etc.) after serving their time and paying for the crime. But, a person who has not been convicted of anything and has an expired CPO cannot have his record sealed and will face a lifetime of diminished employability as the result of employer background checks.

{¶ 36} 12. "The assignment of error is that the court feels it has no obligation to help me find future employment. Yet, the court will allow my future employability to be damaged by having my CPO record on the Montgomery County court website. I have a job it is true. I have been with my current employer for 11 years. But, what if I want a new and better job? I have a master's degree and relevant professional experience. But, who would hire a person with a CPO on their record? No one.

{¶ 37} 13. "The assignment of error here is that the magistrate is demonstrating that he doesn't understand the brevity or seriousness of my motion to seal the CPO. The fact is I have demonstrated that I have been denied jobs in all likelihood based on the CPO record (even though it's expired). A company that hires a presumed violent person is liable if that person acts up and they are aware of it. Common sense tells a person that people will discriminate in a negative way against someone who has a CPO on their record. Cathy Rieger (appellant) my ex-wife worked in human resources. I would think she would clearly know what an employer looks for when hiring."

{¶ 38} The gist of these assignments is that the trial court should have sealed the record of the CPO, because Rieger has not been convicted of domestic violence and because continued Internet access to the record of the CPO is preventing Rieger from obtaining other employment.

{¶ 39} The magistrate and the trial court correctly observed that there are no statutes providing for the sealing or expunging of protection orders.

{¶ 40} What Rieger asked the court to do—albeit perhaps inartfully—was to take it upon itself to alleviate his hardship in obtaining other employment by sealing the record of the CPO. In effect, he asked for judicial expungement.

{¶ 41} In the then absence of statutory authority to do so, judicial expungement of criminal charges dismissed with prejudice before trial was approved in a unanimous decision of the Supreme Court in *Pepper Pike v. Doe* (1981), 66 Ohio St.2d 374, 20 O.O.3d 334, 421 N.E.2d 1303.

{¶ 42} The court stated:

{¶ 43} "The basis for such expungement, in our view, is the constitutional right to privacy. See *Roe v. Wade* (1973), 410 U.S. 113 [93 S.Ct. 705, 35 L.Ed.2d 147]; *Wisconsin v. Constantineau* (1971), 400 U.S. 433 [91 S.Ct. 507, 27 L.Ed.2d 515]; *Griswold v. Connecticut* (1965), 381 U.S. 479 [85 S.Ct. 1678, 14 L.Ed.2d 510].

{¶ 44} "In holding a right to expungement and sealing of all records in this case, we follow other jurisdictions which recognize the power to grant this judicial remedy. When exercising these powers, the trial court should use a balancing test, which weighs the interest of the accused in his good name and right to be free from unwarranted punishment against the legitimate need of government to maintain records. Where there is no compelling state interest or reason to retain the judicial and police records, such as where they arise from a domestic quarrel and constitute vindictive use of our courts, the accused is entitled to this remedy. There can be no compelling state interest or reason to maintain the records of the criminal proceedings against defendants like appellant here, a school teacher with a previously unblemished reputation in her community.

{¶ 45} "Again, this is the exceptional case, and should not be construed to be a carte blanche for every defendant acquitted of criminal charges in Ohio courts. Typically, the public interest in retaining records of criminal proceedings, and making them available for legitimate purposes, outweighs any privacy interest the defendant may assert. *Chase v. King* (1979), 267 Pa.Super. 498, 406 A.2d 1388."

{¶ 46} Here, the magistrate did a balancing test—as if judicial expungement were available—but his balancing test appears to be based on the assumption that Rieger had been convicted of domestic violence, despite the fact that he had just stated that Rieger was not guilty of any crime. Indeed, enhanced penalties for domestic violence require a prior *conviction* of domestic violence. See R.C. 2915.25(D).

{¶ 47} As a matter of public policy, we think it is ultimately for the legislature to provide a remedy for the problem presented here. In 1984, the legislature provided a remedy for the problem the court faced in *Pepper Pike*. See R.C. 2953.52. We conclude, however, that the trial court erred in two respects: (1) in concluding that it required statutory authorization to seal the record of the CPO and (2) in performing an incorrect balancing test, having assumed *arguendo* the authority to judicially expunge the record of the CPO.

{¶ 48} We therefore sustain these assignments.

{¶ 49} The judgment denying relief is reversed, and the matter is remanded for further proceedings consistent with this opinion.

{¶ 50} Rieger's motion to seal the record of the CPO is commended to the discretion of the trial court, and we take no position on how the court should decide the motion.

DONOVAN, J., concurs in judgment only.

GRADY, P.J., dissents.

GRADY, Presiding Judge, dissenting.

{¶ 51} In *City of Pepper Pike v. Doe* (1981), 66 Ohio St.2d 374, 20 O.O.3d 334, 421 N.E.2d 1303, a defendant who was acquitted of criminal charges subsequently moved to expunge his police record and to seal the judicial record of his prosecution. Citing the federal right to privacy expounded in *Roe v. Wade* (1973), 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, the Ohio Supreme Court in *Pepper Pike v. Doe* held that "[t]he criminal charge and dismissal with prejudice were such unusual or exceptional circumstances as to make appropriate the exercise of the trial court's jurisdiction to expunge and seal all records in the case." Id. at 377, 20 O.O.3d 334, 421 N.E.2d 1303.

{¶ 52} The right of privacy applied in *Roe v. Wade* has more recently been explained as one grounded in the right of liberty guaranteed from undue state burden by the Fourteenth Amendment. *Planned Parenthood of Southeastern Pennsylvania v. Casey* (1992), 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674. Putting aside (if possible) the contentious subject those cases involve, it seems clear that the *Casey* rationale comfortably fits the concern underlying the holding in *Pepper Pike v. Doe* : if an accused has been judicially acquitted of criminal charges, it is an undue burden on his liberty interest for the courts to continue to maintain the records of those charges as records available for publication on request. Expungement and sealing are then proper.

{¶ 53} The protection order against Rieger was issued pursuant to R.C. 3113.31(E)(1). Unlike in *Pepper Pike v. Doe,* the proceeding in Rieger's case was

not criminal but civil. Even so, an allegation of domestic violence and a finding that domestic violence occurred are necessary predicates to the issuance of a protective order. R.C. 3113.31(D)(1). And domestic violence is a criminal offense. R.C. 2919.25. Therefore, under the extraordinary-circumstances standard of *Pepper Pike v. Doe,* expungement of the protection order and sealing of the record of the proceeding in which it was issued may be proper.

{¶ 54} I agree that the trial court erred when it held that it lacked authority to expunge Rieger's record. Nevertheless, the court was correct when it denied the requested expungement, because, on this record, Rieger has not demonstrated the extraordinary circumstances that would support expungement.

{¶ 55} Unlike the situation in *Pepper Pike v. Doe,* in which the accused was permanently relieved of legal liability by acquittal of the criminal charges against him, Rieger voluntarily entered into a consent agreement pursuant to R.C. 3113.31(E)(3)(a) that permitted the court to issue the protective order. The fact that the section also limits the term of the order to five years, which has now expired, does not present a circumstance that is the equivalent of an acquittal. It merely relieves Rieger of the constraints that the order imposed. It does not amount to a judicial rejection of the causes on which it was sought, which was the effect of the acquittal in *Pepper Pike v. Doe* and the "extraordinary circumstance" that justified expungement.

{¶ 56} Rieger's real complaint is not that a record of his civil protection order and the proceeding that produced it is maintained, but that the clerk of courts publishes the record on the clerk's Internet web site, making it available to Rieger's prospective employers. That undertaking on the part of clerks is wholly voluntary, being required neither by statute nor rule of the Supreme Court. It implicates an issue of public policy, not a claim subject to judicial relief. Because of that fact, and because clerks are public officials whose positions are created by statute, Rieger's proper avenue of relief is not through an application to the courts for expungement but with the General Assembly, through legislation limiting the clerk's Internet publication of court records. A more appropriate alternative to the practice generally may be a Rule of Superintendence governing the practice promulgated by the Supreme Court, a form of enactment authorized by Section 5(A), Article IV of the Ohio Constitution, and more specifically by Section 5(B) of the same Article, which authorizes the Supreme Court to "make rules to require uniform record keeping for all courts of the state."

{¶ 57} However, and returning to the error assigned, I would affirm the trial court's judgment denying the requested expungement. The court did not reach the extraordinary-circumstances issue, but on this record Rieger has not demonstrated extraordinary circumstances. "While an appellate court may decide an issue on grounds different from those determined by the trial court, the eviden-

464

tiary basis upon which the court of appeals decides a legal issue must have been adduced before the trial court and have been made a part of the record thereof." *State v. Peagler* (1996), 76 Ohio St.3d 496, 668 N.E.2d 489, syllabus. That standard has not been satisfied with respect to the grounds for expungement on which Rieger relies.

{¶ 58} For the foregoing reasons, I would affirm the judgment from which this appeal is taken.