[Cite as *In re E.P.*, 2011-Ohio-5829.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   96602

IN RE:   E.P.

A Minor Child

JUDGMENT:
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No.   PO 10 300039

BEFORE:     Boyle, P.J., Cooney, J., and S. Gallagher, J.

RELEASED AND JOURNALIZED:     November 10, 2011

**ATTORNEYS FOR APPELLANT**

Rodger A.  Pelagalli
Anthony J.  Zamperdo
Rodger A.  Pelagalli Co., L.P.A.
6659 Pearl Road
Suite 401
Parma Heights, Ohio   44130


**FOR APPELLEE**

Amanda King, pro se
6753 Bunker Road
North Royalton, Ohio   44133

MARY J. BOYLE, P.J.:

{¶ 1} After a single fight on a school bus between two sixth-grade boys, one who was 12 years old (E.P.) at the time and one who would turn 12 years old two months later (A.G.), the mother of the 11-year-old obtained a juvenile civil protection order against the 12-year-old.[1] E.P., the respondent, appeals the juvenile court's judgment granting the protection order against him.   He raises three assignments of error for our review:

{¶ 2} "[1.]   The trial court erred in applying the appropriate standard of proof in granting a CPO.

{¶ 3} "[2.]   The trial court erred in granting a civil protection order against the manifest weight of the evidence.

{¶ 4} "[3.] The trial court erred in applying R.C. 2151.34 as it is unconstitutional."

---

[1] The parties in this appeal are referred to by their initials in accordance with this court's policy regarding non-disclosure of identities in juvenile cases.

{¶ 5} Finding merit to E.P.'s first and second assignments of error, we reverse the juvenile court's judgment and remand for the court to vacate the juvenile civil protection order against E.P. and seal all records of the proceeding as required by R.C. 2151.358(D)(2).

Juvenile Civil Protection Orders

{¶ 6} A.G.'s mother obtained a juvenile civil protection order against E.P. pursuant to a relatively new statute, R.C. 2151.34. This statute gives juvenile courts the same authority as common pleas courts to issue and enforce protection orders against juvenile respondents, regardless of the familial relationship between the parties. It became law on June 17, 2010, after the General Assembly passed Am.Sub.H.B. 10 ("H.B. 10"). H.B. 10 is also known as the Shynerra Grant Law. See "Senate approves bill designed to help teens in abusive relationships."[2]

{¶ 7} Shynerra Grant was a 17-year-old high school graduate from Toledo who was headed to college on a scholarship. She was shot and killed by her ex-boyfriend in 2005. For more than a year before this tragic shooting, her ex-boyfriend stalked and abused her, including an incident in 2004 when he broke into her home and broke her jaw. Shynerra had tried to obtain a protection order against her ex-boyfriend, but was turned away from the courts.

{¶ 8} Another teenager, a Cleveland high school student, Johanna Orozco, was shot in the face by her ex-boyfriend in 2007 — days after he was released from juvenile prison for raping

---

[2] Weekly column by Ohio Senator John A. Carey, Jr., March 12, 2010; http://www.ohiosenate.gov/senateImages/128/media/17/03.12.10%20Senate%20Approves%20Bill%20Designed%20To%20Help%20Teens%20In%20Abusive%20Relationships.pdf.

her.   Orozco lived, but has disfiguring injuries.   During their relationship, her ex-boyfriend had repeatedly hit, pushed, and kicked her.   Orozco had also tried to obtain a protection order against her ex-boyfriend, but was unable to get one due to the law regarding protection orders at that time.   As explained by one Ohio senator: "Unfortunately, the abuse that Shynerra and Johanna endured is only a glimpse into what has become a haunting reality for many teens in dating relationships.   According to an investigative series in the Columbus Dispatch last November called Domestic Silence, young Ohioans ages 15 to 19 are twice as likely to experience dating violence as they are to be injured in a car crash.   However, unlike adults who are targets of threats and abuse by a boyfriend, girlfriend or spouse, Ohio teenagers in violent relationships have been unable to get protection orders from a court in an attempt to keep their attackers away."   Id.   "While H.B. 10 will not prevent every violent relationship, hopefully it will provide a stronger defense for some teens in these situations and save young lives."   Id.

## R.C. 2151.34

{¶ 9} To obtain a juvenile civil protection order under R.C. 2151.34(C)(2), the petitioner must allege in the petition that the respondent engaged in a violation of one of the offenses listed in the statute.   Specifically, the petition "shall contain or state all of the following:

{¶ 10} "(a) An allegation that the respondent engaged in a violation of section 2903.11 [felonious assault], 2903.12 [aggravated assault], 2903.13 [assault], 2903.21 [aggravated menacing], 2903.211 [menacing by stalking], 2903.22 [menacing], or 2911.211 [aggravated trespass] of the Revised Code, committed a sexually oriented offense, or engaged in a violation of any municipal ordinance that is substantially equivalent to any of those offenses against the

person to be protected by the protection order, including a description of the nature and extent of the violation;

{¶ 11} "(b) If the petitioner seeks relief in the form of electronic monitoring of the respondent, an allegation that at any time preceding the filing of the petition the respondent engaged in conduct that would cause a reasonable person to believe that the health, welfare, or safety of the person to be protected was at risk, a description of the nature and extent of that conduct, and an allegation that the respondent presents a continuing danger to the person to be protected;

{¶ 12} "(c) A request for relief under this section."

{¶ 13} Further, the juvenile court may grant an ex parte juvenile civil protection order if requested by the petitioner, but only if the court finds "good cause shown at the ex parte hearing" that it is "necessary for the safety and protection of the person to be protected by the order." R.C. 2151.34(D)(1). "Good cause shown" amounts to "[i]mmediate and present danger to the person to be protected by the protection order." Id. "Immediate and present danger includes, but is not limited to, situations in which the respondent has threatened the person to be protected by the protection order with bodily harm or in which the respondent previously has been convicted of, pleaded guilty to, or been adjudicated a delinquent child for committing a violation of section 2903.11, 2903.12, 2903.13, 2903.21, 2903.211, 2903.22, or 2911.211 of the Revised Code, a sexually oriented offense, or a violation of any municipal ordinance that is substantially equivalent to any of those offenses against the person to be protected by the protection order."[3]

---

[3] This statute is similar to R.C. 3113.31 (domestic violence civil protection orders) and 2903.214 (stalking civil protections orders).

## Petitioner's Burden and Standard of Review

{¶ 14} The petitioner's burden of proof in obtaining a juvenile civil protection order and the standard for reviewing such orders come from analogous case law addressing adult civil protection orders.

{¶ 15} With respect to domestic violence civil protection orders, the Ohio Supreme Court has held that "the trial court must find the petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence. R.C. 3113.31(D)." *Felton v. Felton*, 79 Ohio St.3d 34, 1997-Ohio-302, 679 N.E.2d 672, paragraph two of the syllabus.

{¶ 16} Like the statute in *Felton*, R.C. 2151.34 simply requires proof by a preponderance of the evidence that the petitioner is in danger of one of the enumerated offenses in R.C. 2151.34(C)(2) if the juvenile civil protection order is not granted.

{¶ 17} When assessing whether a protection order should have been issued, this court has held that "the resolution of that question depends on whether the petitioner has shown by a preponderance of the evidence that the petitioner *** was entitled to relief." *Abuhamda-Sliman v. Sliman*, 161 Ohio App.3d 541, 2005-Ohio-2836, 831 N.E.2d 453, ¶9, citing *Felton* at paragraph two of the syllabus.

{¶ 18} Accordingly, whether the protection order should have been issued at all (i.e., whether the petitioner met his or her burden by a preponderance of the evidence) is essentially a manifest weight of the evidence review. *Rauser v. Ghaster*, 8th Dist. No. 92699,

2009-Ohio-5698, ¶12, citing *Caban v. Ransome*, 7th Dist. No. 08MA36, 2009-Ohio-1034, ¶7. Judgments supported by competent, credible evidence going to all the essential elements of the claim will not be reversed on appeal as being against the manifest weight of the evidence. *Bryan-Wollman v. Domonko*, 115 Ohio St.3d 291, 2007-Ohio-4918, 874 N.E.2d 1198, ¶3. See, also, *Young v. Young*, 2d Dist. No. 2005-CA-19, 2006-Ohio-978, ¶22 (When an appellant challenges whether the protection order should have been issued at all, the standard of review is whether the trial "court's decision was supported by sufficient competent, credible evidence.").

Contents of Petition and Ex Parte Order

{¶ 19} Within his first assignment of error, E.P. argues that the petition was lacking and that the ex parte order was improvidently granted. We agree.

{¶ 20} R.C. 2151.34(C) *requires* the petitioner to allege certain facts and describe them in sufficient detail. Again, this provision mandates that "[t]he petition *shall contain* or *state all of the following*:

{¶ 21} "(a) *An allegation* that the respondent engaged in a violation of [one of the enumerated offenses] against the person to be protected by the protection order, *including a description of the nature and extent of the violation*[.]" (Emphasis added.)

{¶ 22} In addition to R.C. 2151.34 requiring a petitioner to allege what the respondent did and describe the nature and extent of the act(s), the standardized juvenile civil protection order forms — drafted by the Ohio Supreme Court in Sup.R. 10.05 — require the same. These standardized juvenile civil protection order forms, or ones "substantially similar" to them, must be used by the juvenile court as mandated by the Ohio Supreme Court. See Sup.R. 10.05A.

{¶ 23} The standardized petition form for a juvenile civil protection order instructs that the petitioner "describe the nature and extent of the conduct that causes you to believe that Respondent will cause or has caused you physical harm or mental distress." See Sup.R. 10.05 and Form 10.05-D: Petition for Juvenile Civil Protection Order and Domestic Violence Protection Order (the rule was amended effective March 1, 2011, and the petition is now Form 10.05-B). The instructions that are included with the standardized form explain to a petitioner: "provide a description of the Respondent's action(s) *** [and] [state] the date(s) of the incident(s) that caused you to file the petition. An exact date is not necessary; approximate time frame may be sufficient. You may attach additional pages if necessary." See Sup.R. Form 10.05-A: How to Complete a Petition for a Juvenile Civil Protection Order or a Juvenile Domestic Violence Civil Protection Order. The standardized petition form also has several blank lines for a petitioner to describe the nature and extent of the act, and states: "[a]ttach additional page if you need more room."

{¶ 24} In her petition, A.G.'s mother failed to allege *any facts* — let alone describe "the nature and extent" of the alleged violation. Further, the magistrate denied E.P. the opportunity to conduct discovery in this case, stating that the Rules of Juvenile Procedure do not permit discovery without the court's permission. But under R.C. 2151.34(G), the Rules of Juvenile Procedure do not apply. R.C. 2151.34(G) mandates that "[a]ny proceeding under this section *shall be conducted* in accordance with the Rules of Civil Procedure[,]" which do permit discovery. (Emphasis added.)

{¶ 25} Thus, E.P. was forced to defend himself without knowing the allegations made against him. At a minimum, due process in a civil case includes notice of the proceeding and a

meaningful opportunity to be heard. *In re Rose* (May 21, 1992), 8th Dist. No. 62493. E.P. could not have had a meaningful opportunity to be heard without knowing the allegations against him prior to the hearing.

{¶ 26} Accordingly, the trial court erred by not dismissing the petition at the outset, and granting the ex parte order without any allegations in the petition.

### Full Hearing

{¶ 27} E.P. further argues in his first and second assignments of error that the trial court applied the wrong standard of proof when granting the protection order after the full hearing, and that the protection order was against the manifest weight of the evidence. These issues are closely related and thus, we will address them together.

{¶ 28} E.P. maintains that the trial court was required to find "immediate and present danger" before granting the juvenile civil protection order. We disagree with E.P. that the trial court was required to find "immediate and present danger," as that standard applies to ex parte juvenile civil protection orders. See R.C. 2151.34(D)(1). But in order to obtain a juvenile civil protection order after a full hearing, the petitioner must *still* establish that the person to be protected is in danger of *future* harm. *Felton*, 79 Ohio St.3d at paragraph two of the syllabus.

{¶ 29} The juvenile civil protection order statute, R.C. 2151.34, is similar to the civil domestic violence statute, R.C. 3113.31, in that both are designed to protect the petitioner from *future* harm. "'Since the statute is designed to prevent future violence, the court looks for the danger of future violence, not proof of past violence. Actual prior physical harm, while helpful, is not necessary for a finding that a petitioner is in danger of domestic violence.'" *Gooderham*

*v. Patterson* (Nov. 9, 1999), 4th Dist. No. 99 CA 01, quoting Adrine and Ruden, Ohio Domestic Violence Law (1999 Ed.) 266-67, Section T10.10.

{¶ 30} To obtain a civil protection order under R.C. 3113.31(C), the statute requires that the petitioner prove by a preponderance of the evidence that the respondent committed domestic violence against the petitioner or the petitioner's family member as defined in R.C. 3113.31(A). For purposes of R.C. Chapter 3113.31, "'domestic violence' means the occurrence of one or more of the following acts against a family or household member: (a) Attempting to cause or recklessly causing bodily injury; (b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code; (c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code; (d) Committing a sexually oriented offense."   R.C. 3113.31(A)(1).

{¶ 31} It is clear from a plain reading of R.C. 3113.31(A) that domestic violence can occur, among other things, from *one act* of violence or *one act* of placing another in fear of imminent serious physical harm by the threat of force.   R.C. 3113.31(A).   But the Ohio Supreme Court still held that "[w]hen granting a protection order," the "trial court must find that the petitioner has shown by a preponderance of the evidence that the petitioner (or petitioner's family or household members) *are in danger of domestic violence*."   (Emphasis added.)   *Felton*, 79 Ohio St.3d at paragraph two of the syllabus.   Indeed, the Supreme Court made clear that protection orders issued under R.C. 3113.31 are an "appropriate and efficacious method to prevent future domestic violence[.]"   Id. at 41.   Thus, under R.C. 3113.31, *one act* of domestic violence can be sufficient to obtain a civil protection order — but only if the trial court

determines from the facts presented that the petitioner is *in danger* of domestic violence from the respondent.

**{¶ 32}** Just as domestic violence can occur from one incident, so can assault and felonious assault. See R.C. 2903.11 and 2903.13. And although *one act* of assault or felonious assault could be sufficient to obtain a juvenile civil protection order under R.C. 2151.34 — under *Felton*, there still must be evidence that the person to be protected under the order is *in danger* of future harm by the respondent. Id.

**{¶ 33}** To determine whether a petitioner is in danger of future harm in the domestic violence context, courts routinely look to the petitioner's and respondent's history, including whether any past acts of violence had ever occurred. See *Reynolds v. White* (Sept. 23, 1999), 8th Dist. No. 74506 (a victim's history with the perpetrator may cause the victim to experience reasonable fear of the perpetrator's threats of domestic violence); *Solomon v. Solomon*, 157 Ohio App.3d 807, 2004-Ohio-2486, 813 N.E.2d 918, ¶23 ("[P]etitioner may rely on past acts to establish a genuine fear of violence in the present situation."); *Young,* 2006-Ohio-978 (although there had been past acts of violence, there must be some evidence that there remains a "present threat of future violence"). It is our view that in the context of juvenile civil protection orders, this court must determine whether the evidence as a whole indicates that a person to be protected under the order is in danger of future harm by the juvenile respondent. This necessarily includes looking to other factors in the case, including, inter alia, the parties' history, past acts of violence, controlling or threatening behavior, or threats of bodily harm. See *Reynolds*, *Solomon*, and *Young*.

## Analysis

{¶ 34} This court must determine if there was competent, credible evidence that A.G. was in danger of future harm from E.P. And after reviewing the record, we do not find any evidence — let alone competent, credible evidence — that A.G. was in danger of future harm by E.P., such that A.G. is entitled to an order protecting him from further harm. The following facts were presented at the hearing.

{¶ 35} A.G. and E.P. were in sixth grade when the events on the school bus transpired. A.G. testified that when he was on the bus, E.P. kept taking his hat and throwing it. As A.G. was getting off the bus, he said he reached to "pull [himself] and slide," and he "accidentally touched [E.P.'s] hair." A.G. stated that is when E.P. punched him "in the head." A.G. further testified that is when "other kids grabbed me," and E.P. "started punching me in my face and my head." A.G. said that he "broke free" and "jumped back in and *** started punching [E.P.]" A.G. also admitted that he injured E.P. when he "push[ed] him away with his feet, and when [he] got on top of [E.P.] and started punching him."

{¶ 36} A.G. testified that he and E.P. do not "hang out" with each other, nor do any of their friends. A.G. said that sometimes E.P. cusses at him while he is in the hallway and E.P. "will push [his] book bag." A.G. stated that he never felt threatened by E.P. before the bus incident, nor had E.P. made any threats to him since the bus incident. A.G. also testified that he was not afraid of E.P. A.G. did admit that he had been in two previous fights, one in sixth grade and one in fifth grade, both of which he described. He explained that in one of the fights, he threw the first punch, picked the other boy up, and "slammed him." A.G. said that he had never known E.P. to be in a fight.

{¶ 37} According to a school incident report completed by E.P., the events occurred differently. E.P. said that he was on the bus texting "when [A.G.] would look over the seat and would try to grab [E.P.'s] phone, pull [E.P.'s] hair, pull [E.P.'s] ears, [and] messing round with putting his hand on [E.P's] face."[4] E.P. admitted taking A.G.'s hat and giving it back to him. E.P. then explained the remaining events: "on the way out, [A.G.] sucker punched me in the face so I dropped my homework and hit him back. Then he started hitting me again and I would only hit him if he hit me. He also kicked me in the lower area first and when I got home it was hard to eat. He also hit me in the throat so it was also hard to swallow. Also I was sitting for the most part until the end. I do realize I broke his nose and am sorry, but it was self defense."

{¶ 38} The assistant principal, Jeffrey Cicerchi, testified that he investigated the bus incident and obtained five other school incident reports (in addition to E.P.'s) as part of his investigation. He stated that "all of the students [he] spoke with and the bus driver agreed that the aggressor was [A.G.]." He further agreed that "[E.P.] did not physically punch [A.G.] until after he had been attacked by [A.G.], according to the statements." Cicerchi further explained that he was in charge of disciplining E.P. and that prior to the bus incident, E.P. did not have a disciplinary record for "fighting, harassing, or bullying." He explained that he knows E.P. to be an "A" student who has received awards and certifications of merit, E.P. had never been disciplined in the past, and E.P. is a member of student council.

{¶ 39} Cicerchi further testified that he did not believe E.P. was a threat to anybody, nor had he been on the day of the bus incident. Cicerchi stated that A.G. and E.P. received the same

---

[4]On each school incident report discussed here, A.G.'s name is redacted. Testimony from several witnesses, however, described that A.G.'s name was redacted to protect his privacy.

punishment from the school pursuant to school policy requiring any student who gets into a fight to receive equal discipline — regardless of who started the fight.

{¶ 40} The five school incidents reports were also entered into evidence (one from an eighth grader, one from a seventh grader, two from sixth graders, and one from the bus driver). The bus driver reported that "another student was slapping [E.P.] so [E.P.] hit him causing his nose to bleed." Just as Cicerchi testified, the four students all indicated that it was A.G. who was the aggressor, i.e., A.G. had been harassing E.P. and A.G. threw the first punch. Several of the students also reported that E.P. had warned A.G. to stop bothering him numerous times; one student indicated that E.P. warned A.G. ten times to stop bothering him.

{¶ 41} A.G.'s mother and stepfather and E.P.'s father also testified. Their testimony regarding the events that transpired mirrored that of their respective children.

{¶ 42} After reviewing the record as a whole, it is this court's view that there is no evidence in the record that A.G. is in danger of future harm by E.P. Simply because A.G.'s nose was broken, that does not automatically entitle him to a juvenile civil protection order. It is our view that one incident resulting in a broken nose does not equate with danger of future harm.

{¶ 43} The record establishes that A.G. and E.P. were two sixth grade boys who got into a fight on the school bus. E.P. was 12 years old at the time of the incident and A.G. would turn 12 years old two months later. Both boys received equal discipline from the school for getting into a fight, as required by school policy. Although there is a dispute as to who started the fight, E.P. broke A.G.'s nose in the fight.

{¶ 44} But nowhere in the record is there any evidence — let alone competent, credible evidence — that A.G. is in danger of future harm by E.P. The two boys had never been in a

fight with each other before this incident. There was no evidence that E.P., who had never before gotten into a fight with anyone or had any disciplinary issues, had ever threatened A.G. with harm — before or after the bus incident. Nor was there any evidence that E.P. had engaged in any pattern of conduct that would amount to harassing A.G. or bullying him — physically or mentally. And notably, A.G. testified that he was not afraid of E.P.

{¶ 45} And although A.G.'s mother is understandably upset and will not "accept somebody putting their [sic] hands on [her] son," that is not a sufficient reason for a court to grant a protection order. Id. at ¶60. This court does not believe that the legislature intended for every child who gets into a fight at school to be able to obtain a juvenile civil protection order. The potential ramifications of such a holding would be far reaching. This could not have been what the legislature intended when it passed H.B. 10.

{¶ 46} Because there is no evidence in this case that A.G. is in danger of future harm by E.P., the trial court's judgment was not supported by competent, credible evidence and, therefore, was against the manifest weight of the evidence. Further, since the protection order should not have been granted, the juvenile court must seal all records of the proceeding pursuant to R.C. 2151.358(D)(2).

{¶ 47} E.P.'s first and second assignments of error are sustained.

{¶ 48} In his third assignment of error, E.P. argues that R.C. 2151.34 is unconstitutional. Since E.P. failed to raise this issue with the trial court, this court need not address it for the first time on appeal. *State v. Awan* (1986), 22 Ohio St.3d 120, 489 N.E.2d 277, syllabus. Thus, we overrule E.P.'s third assignment of error.

{¶ 49} Judgment reversed. Case remanded for juvenile court to vacate the juvenile civil protection order against E.P. and seal all records of the proceeding.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., CONCURS;
COLLEEN CONWAY COONEY, J., DISSENTS WITH SEPARATE DISSENTING OPINION

COLLEEN CONWAY COONEY, J., DISSENTING:

{¶ 50} I respectfully dissent.

{¶ 51} The history behind civil protection orders set forth by the majority is not the issue presented on appeal. Nor is the fear that all parents will now seek a CPO when children fight at school.

{¶ 52} The majority first attacks the sufficiency of the petitioner's complaint seeking the civil protection order. However, appellant has not alleged that the petition is insufficient nor has he claimed ignorance surrounding the nature and extent of the alleged violation. Therefore, I

disagree with the majority's sua sponte raising this issue. The issues for our review are set forth in the assignments of error and issues presented as follows:

"I First Assignment of Error
The Trial Court erred in applying the appropriate standard of proof in granting a CPO.

"Issues Presented for Review and Argument
1. Whether a Petitioner has a duty to prove, via preponderance of the evidence that Petitioner is in immediate and present danger from the Respondent in order to seek and receive a R.C. §2151.34, CPO.

"II Second Assignment of Error
The Trial Court erred in granting a civil protection order against the manifest weight of the evidence.

"Issues Presented for Review and Argument
1. Whether the evidence favored the granting of a CPO where there was no showing of reasonable fear.
2. Whether self-defense was shown by preponderance of the evidence.

"III Third Assignment of Error
The Trial Court erred in applying R.C. §2151.34 as it is unconstitutional.

"Issues Presented for Review and Argument
1. Whether §2151.34 violates substantive due process."

{¶ 53} Appellant's entire argument is that the court abused its discretion and improvidently granted the CPO after a full hearing without a showing of "immediate and present danger." His challenge to the ex parte hearing is that no criminal charge had been filed and, therefore, no determination of guilt made. He claims petitioner was never in fear of the appellant and there had been no threats against A.G. Rather, appellant maintains the circumstances warranting a CPO had passed and, therefore, no protection order should issue.

{¶ 54} In its findings of fact, the magistrate found:

"The Petitioner has met their [sic] burden of proof, and [A.G] is afraid Respondent will cause physical harm to him. The Court finds by a preponderance of the

evidence that (1) the Petitioner, and/or the Petitioner's family or household member(s) are in danger of being or have been harmed by Respondent as defined in R.C. 2903.11, 2903.12, 2903.13, 2903.21, 2903.211, 2903.22, 2911.211, and 2950.01; and (2) the following orders of equitable, fair and necessary to protect the person(s) named in this Order from offenses of violence."

{¶ 55} As a whole, R.C. 2151.34 supports the court's conclusion that proof of "immediate and present danger" is not required for a civil protection order following a full hearing and that past harm suffices. R.C. 2151.34 relates to the ex parte hearing and provides in pertinent part:

"(D)(1) If a person who files a petition pursuant to this section requests an ex parte order, the court shall hold an ex parte hearing as soon as possible after the petition is filed * * *. The court, *for good cause shown at the ex parte hearing*, may enter any temporary orders, with or without bond, that the court finds necessary for the safety and protection of the person to be protected by the order. Immediate and present danger to the person to be protected by the protection order constitutes good cause for purposes of this section. Immediate and present danger includes, but is not limited to, situations in which the respondent has threatened the person to be protected by the protection order with bodily harm * * * ." (Emphasis added.)

{¶ 56} Nothing in R.C. 2151.34(D)(1) suggests that this standard applies to the full hearing to consider the issuance of a more permanent civil protection order. R.C. 2151.34(D)(2)(a) requires the court to hold a full hearing "within ten court days after the ex parte hearing." R.C. 2151.34(E)(1)(a) provides:

"After an ex parte or full hearing, the court may issue any protection order, with or without bond, that contains terms designed to ensure the safety and protection of the person to be protected by the protection order."

{¶ 57} Although R.C. 2151.34(E)(1)(a) does not provide a well-defined standard upon which civil protection orders may be granted, when the statute is considered in its entirety, it is clear the legislature did not intend to require proof of "immediate and present danger." R.C. 2151.34(E)(1)(b), however, requires proof that "the respondent presents a continuing danger to the person to be protected" in order to require electronic monitoring. Under the doctrine of

expressio unius est exclusio alterius, it follows that a civil protection order without electronic monitoring does not require this additional proof.

{¶ 58} In addition, R.C. 2151.34(E)(1)(a) requires that the court design the terms of the order to ensure the petitioner's safety and therefore dictates that the court tailor the terms of the civil protection order to the particular situation presented at the full hearing. In this way, the court may consider evidence from both the petitioner and the respondent before crafting the specific terms of the civil protection order if one is to be granted.

{¶ 59} E.P. argues the same "immediate and present danger standard" set forth in R.C. 2151.34(D)(1) for ex parte orders applies to civil protection orders granted after a full hearing just as Civ.R. 65(A) and (B) apply the same standard to permanent restraining orders as are applied to temporary restraining orders. However, temporary restraining orders are used to maintain the status quo pending a hearing on a permanent injunction. Ex parte civil protection orders are used to change the status quo by enjoining certain conduct pending a full hearing after which the injunction may be either continued for a definite period of time or terminated. Moreover, civil protection orders are designed to protect people from harm caused by another's future actions. If temporary or ex parte protection orders perform as intended, there should be no "immediate and present danger" at the time of the full hearing because the danger has been prevented by the ex parte order. Thus, if the petitioner were required to prove "immediate and present danger" at the full hearing after previously obtaining an ex parte civil protection order, theoretically petitioners would never meet that standard. And, respondents could face sanctions for violating the ex parte orders if petitioners claimed to be in immediate danger.

{¶ 60} The majority relies on *Felton v. Felton*, 79 Ohio St.3d 34, 1997-Ohio-302, 679 N.E.2d 672, to support its holding. In *Felton*, the Ohio Supreme Court interpreted R.C. 3113.31, which governs petitions for protective orders in domestic violence cases. Although I agree *Felton* is instructive in this case, it does not support the majority's position. The *Felton* court held that "the trial court must find the petitioner has shown by preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence. R.C. 3113.31(D)." Id. at paragraph two of the syllabus. Neither the *Felton* court nor R.C. 3113.31(D) requires proof of an "immediate and present danger."

{¶ 61} I agree that R.C. 3113.31 is similar to R.C. 2151.34 in that both are designed to protect the petitioner from future harm. Like the statute in *Felton*, R.C. 2151.34 simply requires proof by a preponderance of the evidence that the petitioner is in danger of bodily harm if the civil protection order is not granted. R.C. 2151.34(D)(1). When assessing whether a protection order should have issued, this court has held that "the resolution of that question depends on whether the petitioner has shown by a preponderance of the evidence that the petitioner * * * was entitled to relief." *Abuhamda-Sliman v. Sliman,* 161 Ohio App.3d 541, 2005-Ohio-2836, 831 N.E.2d 453, ¶9, citing *Felton* at paragraph two of the syllabus.

{¶ 62} Judgments supported by some competent, credible evidence going to all the essential elements of the claim will not be reversed on appeal as being against the manifest weight of the evidence. *Bryan-Wollman v. Domonko*, 115 Ohio St.3d 291, 2007-Ohio-4918, 874 N.E.2d 1198, ¶3. The Ohio Supreme Court has explained that when reviewing challenges to the manifest weight of the evidence, a court of appeals must be guided by the presumption that the findings of the trier of fact were indeed correct. *Seasons Coal Co. v. Cleveland* (1984), 10

Ohio St.3d 77, 79-80, 461 N.E.2d 1273. The underlying rationale for giving deference to the trial court's findings "rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id.

{¶ 63} I strongly disagree with the majority's statement that A.G. is not afraid of E.P. The question posed to A.G. asked him, "As you sit here right now, are you afraid of E.P.?" The magistrate was best able to view the witnesses and observe their demeanor. The magistrate heard A.G.'s father state that A.G. is afraid of E.P. (Tr. 47.) The magistrate heard A.G. answer "no" when asked if he was afraid of E.P. as he sat there "right now" at the hearing. I would defer to the trial court's findings because the magistrate was best able to view the witnesses and weigh their credibility.

{¶ 64} At the hearing, A.G. testified that E.P. punched him several times in the face while two other students restrained his arms. It was undisputed that E.P. not only broke A.G.'s nose but E.P.'s repeated assault pushed A.G.'s broken nose into his sinuses, causing him to be unable to breathe through his nose for weeks after the incident. At the time of the hearing, A.G. had undergone one surgery to repair his nose so he could breathe properly, and a second surgery was needed to straighten his nose.

{¶ 65} With this type of serious injury, E.P.'s assault on A.G. could constitute felonious assault if E.P. had been charged. R.C. 2903.11(A)(1), which governs felonious assault, provides: "[n]o person shall knowingly * * * cause serious physical harm to another." "Serious physical harm" is defined to include "some temporary, substantial incapacity; [or] * * * that involves acute pain of such duration as to result in substantial suffering or that involves any

degree of prolonged or intractable pain[.]" R.C. 2901.01(A)(5)(b)-(e). When a victim's injuries are serious enough to cause him to seek medical treatment, a jury may infer the victim suffered serious physical injury. *State v. McCoy* (Sept. 7, 2000), Franklin App. No. 99AP-1048, citing *State v. Winston* (1991), 71 Ohio App.3d 154, 593 N.E.2d 308. A.G. suffered a substantial incapacity evidenced by his inability to breathe through his nose and required at least two surgeries to repair his nose.

{¶ 66} E.P. claims he punched A.G. in self-defense. The bus driver's statement indicated A.G. slapped E.P. However, the evidence presented by appellee showed that E.P. repeatedly punched A.G. in the face while A.G. was restrained by two other students. Self-defense is not justified under these circumstances. Although there was evidence that A.G. may have initially provoked a response by "harassing" or "annoying" E.P., such provocation did not justify the viciousness of E.P.'s response. Based on this evidence, I would find the trial court's grant of a civil protection order, which requires proof that A.G. was in danger of being harmed or has been harmed by E.P., is supported by the manifest weight of the evidence. I find no abuse of discretion in granting the civil protection order.

{¶ 67} Accordingly, I would affirm.