[Cite as *Insani v. Federici*, 2011-Ohio-6322.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

MARK INSANI                                       :

    Plaintiff-Appellee                        :        C.A. CASE NO. 2010 CA 79

v.                                                :        T.C. NO.    40005

JAMES A. FEDERICI                                 :         (Civil appeal from Common
                                                           Pleas Court, Juvenile    Division)
    Defendant-Appellant                       :

                                                  :

. . . . . . . . . .

# O P I N I O N

Rendered on the ___9th___ day of ____December____, 2011.

. . . . . . . . . .

FRANK M. PAYSON, Atty. Reg. No. 0055165, 120 West Second Street, Suite 400, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

ROBERT K. HENDRIX, Atty. Reg. No. 0037351, 87 S. Progress Drive, Xenia, Ohio 45385
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}   James A. Federici, also known as Alex Federici, appeals from a judgment

of the Greene County Court of Common Pleas, Juvenile Division, which granted a

juvenile civil protection order against him to Mark, Diane, and Lindsay Insani.

{¶ 2}   In 2010, Alex Federici and Lindsay Insani (who were both under the age of eighteen) attended Beavercreek High School together and dated one another.   Mark and Diane Insani are Lindsay's parents.   In September 2010, Alex's parents became concerned because he was sneaking out of the house at night; they feared he might be using drugs, and he was having trouble at school.   Federici's parents discussed these concerns with Lindsay's parents.   Lindsay's parents suspected that Alex was visiting Lindsay at night, and they caught him climbing in Lindsay's bedroom window on September 18 at 3:00 a.m.   Mark Insani confronted Alex, and an unpleasant encounter ensued.

{¶ 3}   Although the Insanis did not want to press charges against Alex, they did call the police to document the incident.   Both sets of parents encouraged Alex and Lindsay to take a break from their relationship to work on "sorting things out."   In early October, two more incidents occurred between Alex and Lindsay.   In the first incident, Alex insisted on talking with Lindsay at school, although a staff member apparently attempted to prevent him from doing so; in the second incident, Alex called Lindsay's name from outside her home and left some papers on her windowsill.   The Insanis again called the police.

{¶ 4}   On October 11, 2010, the Insanis filed a petition for a juvenile civil protection order against Alex (Greene Co. C.P. No. 40005).   A few days later, the Federicis filed a petition for a juvenile protection order against Lindsay (Greene Co. C.P. No. 40009), claiming that she had continued to contact Alex after she had filed her petition for a protection order, which made it difficult for Alex to avoid contact with her.

{¶ 5}   The court scheduled both petitions for a hearing on November 4, 2010. Mark, Diane, and Lindsay Insani attended the hearing and were represented by counsel.   Alex's parents, James and Karen Federici, also attended the hearing, but neither they nor Alex were represented by counsel.   Alex did not attend the hearing.

{¶ 6}   Following the hearing, the trial court granted the Insanis' petition for a juvenile civil protection order.   The order prohibited Alex from "committing acts of abuse or threats of abuse" against Lindsay or her parents.   Among other things, the order also required Alex to stay away from the Insanis' home and Lindsay's driving school, to avoid having any contact with them, to stay twenty feet away from Lindsay at school, and to avoid the use or possession of alcohol or illegal drugs.   The trial court denied the Federicis' request for a protection order.

{¶ 7}   Alex raises two assignments of error on appeal.

{¶ 8}   The first assignment of error states:

{¶ 9}   "THE TRIAL COURT ERRED AND VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO COUNSEL BY FAILING TO DETERMINE WHETHER APPELLANT WAIVED HIS RIGHT TO COUNSEL."

{¶ 10} Alex claims that his rights were violated because he was not represented by counsel and because the trial court did not inquire as to his reasons for or understanding of his waiver of his right to counsel.

{¶ 11} Generally, a child, the child's parents or custodian, or any other person in loco parentis of the child is entitled to representation by legal counsel at all stages of the proceedings in the juvenile court; if, as an indigent person, a party is unable to employ counsel, the party is entitled to have counsel provided for him.   R.C. 2151.352.   "If a

party appears without counsel, the court shall ascertain whether the party knows of the party's right to counsel and of the party's right to be provided with counsel if the party is an indigent person. *** Counsel must be provided for a child not represented by the child's parent, guardian, or custodian. If the interests of two or more such parties conflict, separate counsel shall be provided for each of them." (emphasis added). R.C. 2151.352. Moreover, the right to due process applies in juvenile court proceedings. *In re Anderson* (2001), 92 Ohio St.3d 63, 66, 2001-Ohio-131.[1]

{¶ 12} In order to determine whether a juvenile has validly waived his right to counsel, courts must consider the totality of the circumstances. Id. at ¶108. Relevant factors include the age, intelligence, and education of the juvenile; the juvenile's background and experience generally and in the court system specifically; the presence or absence of the juvenile's parent, guardian, or custodian; the language used by the court in describing the juvenile's rights; the juvenile's conduct; the juvenile's emotional stability; and the complexity of the proceedings. Id. The degree to which the juvenile's parent is capable of assisting and willing to assist the juvenile in the waiver analysis is also a factor. *In re J.F.*, 178 Ohio App.3d 702, 2008-Ohio-4325, ¶91. When the record does not show that a parent advised the juvenile prior to proceeding without counsel, a waiver of counsel is invalid. Id.

{¶ 13} In this case, the trial court's notice to James, Karen and Alex Federici of

---

[1] The notion that a juvenile has a right to an attorney to defend against a petition for a juvenile civil protection order differs from how such a case would be treated for an adult; because the determination of whether to grant a protection order is civil and is "not the equivalent of finding that the person against whom the order is granted has committed a criminal offense," an adult respondent is not entitled to representation. See *Rieger v. Rieger*, 165 Ohio App.3d 454, 2006-Ohio-482, ¶ 9; *State ex rel. Jenkins v. Stern* (1987), 33 Ohio St.3d 108, 110; R.C. 2903.214.

the hearing stated: "You are hereby notified that every party has a right to be represented by an attorney. If you wish to have legal representation, you must arrange to hire an attorney." When Alex's parents appeared at the hearing, they were unrepresented by counsel, and Alex was not present. The court did not inquire, on the record, as to the reason for Alex's absence or his representation at the hearing by only his parents.

{¶ 14} On appeal, Alex contends that the trial court violated his right to counsel by not inquiring as to whether he had knowingly waived his right to counsel. We disagree. Because Alex failed to appear at the hearing, the trial court was unable to question him about his rights. Under these circumstances, the court was not required to delay the proceedings to make such an inquiry. And questioning Alex's parents with respect to this issue would have been futile, because the court could not have reasonably relied on their representations as to Alex's understanding of or desire to waive his rights. See *In re C.H.* 162 Ohio App.3d 602, 2005-Ohio-4183, ¶10 ("To ascertain whether a waiver may be inferred, the court must take into account the total circumstances of the individual case, including the background, experience and conduct" of the party who asserts a right to counsel in juvenile proceedings.).

{¶ 15} Alex also argues that his right to counsel was violated by his parents' representation of him at the hearing. He asserts that his parents could not have acted as the counsel to which he was entitled, because doing so would have amounted to the unauthorized practice of law. However, our review of the hearing transcript makes clear that Alex's parents did not act or attempt to act as legal counsel for Alex. They were named on the petition themselves, and their involvement was aimed primarily at

bolstering their own petition for a juvenile protection order. (They testified that Lindsay continued to contact Alex, making it difficult for him to avoid contact with her.) Moreover, the record does not contain any suggestion that the trial court viewed the parents' role as one of counsel for Alex.

{¶ 16} Alex cannot complain of the absence of counsel when he failed to appear before the juvenile court.

{¶ 17} The first assignment of error is overruled.

{¶ 18} The second assignment of error states:

{¶ 19} "THE TRIAL COURT'S DECISION TO GRANT A PROTECTION ORDER BELOW WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 20} Alex contends that the Insanis "offered no competent, credible evidence" that they were fearful of him.

{¶ 21} To obtain a juvenile civil protection order under R.C. 2151.34(C)(2), the petitioner must allege in the petition that the respondent engaged in a violation of one of the offenses listed in the statute, must provide a description of the nature and extent of the violation, and must request relief under this section. Menacing is one of the listed offenses and the one upon which the Insanis relied. Menacing is defined as "knowingly caus[ing] another to believe that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family." R.C. 2903.22(A).

{¶ 22} The petitioner's burden of proof in obtaining a juvenile civil protection order and the standard for reviewing such orders come from analogous case law addressing adult civil protection orders. *In re E.P.*, Cuyahoga App. No. 96602,

2011-Ohio-5829, ¶14. With respect to domestic violence civil protection orders, the Ohio Supreme Court has held that "the trial court must find the petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence. R.C. 3113.31(D)." *Felton v. Felton*, 79 Ohio St.3d 34, 1997-Ohio-302, paragraph two of the syllabus.

{¶ 23} Like the statute in *Felton*, R.C. 2151.34 simply requires proof by a preponderance of the evidence that, if the juvenile civil protection order is not granted, the petitioner is in danger of one of the enumerated offenses in R.C. 2151.34(C)(2). *In re E.P.* at ¶16.

{¶ 24} "When assessing whether a protection order should have been issued, *** 'the resolution of that question depends on whether the petitioner has shown by a preponderance of the evidence that the petitioner *** was entitled to relief.' *Abuhamda-Sliman v. Sliman*, 161 Ohio App.3d 541, 2005-Ohio-2836, ***, ¶9, citing *Felton* at paragraph two of the syllabus. Accordingly, whether the protection order should have been issued at all (i.e., whether the petitioner met his or her burden by a preponderance of the evidence) is essentially a manifest weight of the evidence review. *Rauser v. Ghaster*, [Cuyahoga App.] No. 92699, 2009-Ohio-5698, ¶12, citing *Caban v. Ransome*, [Mahoning App.] No. 08MA36, 2009-Ohio-1034, ¶7. Judgments supported by competent, credible evidence going to all the essential elements of the claim will not be reversed on appeal as being against the manifest weight of the evidence. *Bryan-Wollman v. Domonko*, 115 Ohio St.3d 291, 2007-Ohio-4918, *** ¶3. See, also, *Young v. Young*, [Greene App.] No.2005-CA-19, 2006-Ohio-978, ¶22 ***." Id. at ¶17-18.

{¶ 25} At the hearing, Mark Insani testified that, when he confronted Alex after Alex had climbed into Lindsay's window, he asked Alex to sit so they could talk, and Alex refused. Mark Insani testified that Alex was "very threatening" and "very belligerent." Mark also testified that Alex was bigger and taller than Mark, and that Alex's hands were clenched into fists. According to Mark, Alex insisted that he could see Lindsay any time he wanted, and Mark could not stop him. During this confrontation, Alex was within "5 inches" of Mark's face. Mark testified that he felt threatened and fearful for his own safety, as well as that of his wife and daughter. He also stated that they "saw a side of Alex that [they] had never seen before," which partially motivated their call to the police. The Insanis called the police twice about Alex's behavior.

{¶ 26} Mark also testified that there had been an incident at school where Alex had been very confrontational with Lindsay and had disregarded school authorities; he did not recount the specifics of this incident. Mark stated that he was particularly concerned by Alex's defiance of all authorities, including his parents, the police, and school officials.

{¶ 27} Beavercreek Police Officer Eric Grile testified that, after responding twice to the Insanis' house for complaints related to Alex, he talked with a Beavercreek High School Resource Officer about Alex's behavior at school. Grile confirmed that there had been an incident at school in which Alex came into Lindsay's classroom and insisted on speaking with Lindsay. A staff member told him to leave, but he twice refused to do so. Alex was disciplined at school for this incident. The school principal also testified about this incident and stated that Lindsay reported being afraid to come

to school.

{¶ 28} Barbara Fryman, the director of Greene County Juvenile Court's diversion program,

{¶ 29} through which she worked with Lindsay and Alex, testified that Lindsay reported feeling intimidated by Alex, but denied that he had physically abused her.

{¶ 30} The Insanis presented evidence from which the trial court could have concluded, by a preponderance of the evidence, that if a juvenile civil protection order were not granted, the Insanis were in danger of physical harm. The trial court's conclusion was not against the manifest weight of the evidence.

The second assignment of error is overruled.

The judgment of the trial court will be affirmed.

. . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies mailed to:

Frank M. Payson
Robert K. Hendrix
Hon. Robert W. Hutcheson